## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **No. 3:24cr152** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DAVID FELICIANO-SEIZE,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is a motion to dismiss filed by Defendant David Feliciano-Seize pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. In this matter, the government charged Feliciano-Seize with violating 18 U.S.C. § 922(g)(1) ("Section 922(g)(1)") for being a felon in possession of a firearm. The government also contends that the defendant, two years earlier, made a false statement during the attempted acquisition of a firearm.

In 1989, Feliciano-Seize pled guilty to armed robbery in Massachusetts. He served ten (10) years in state prison. Feliciano-Seize contends that Section 922(g)(1) is unconstitutional as applied to him due to the passage of time since he served that felony sentence. The government counters that Feliciano-Seize remains a dangerous individual and that the nation's historical tradition of firearm regulation supports disarming convicted armed robbers like Feliciano-Seize. For

the reasons set forth below, Section 922(g)(1) does not violate Feliciano-Seize's Second Amendment rights.

**Background**

On June 18, 2024, a federal grand jury returned an indictment charging Feliciano-Seize with two gun-related offenses. (Doc. 1).  Count 1 alleges that, on or about September 21, 2021, the defendant made a false statement to a federally licensed firearms dealer in connection with an attempt to acquire a firearm in violation of 18 U.S.C. § 922(a)(6). (Id.)  Feliciano-Seize allegedly attempted to obtain a Smith & Wesson Sport 1 5.56 mm rifle. (Id.)  Count 2 alleges that Feliciano-Seize violated Section § 922(g)(1) on or about October 22, 2023, by knowingly possessing a Taurus .38 caliber revolver.  The indictment does not offer much more in the way of background facts. [1]

On July 3, 2024, Feliciano-Seize entered a plea of not guilty. (Doc. 13).  On January 24, 2025, following the Third Circuit Court of Appeals' decision in Range v. Atty. Gen., 124 F.4th 218 (3d Cir. 2024) ("Range II"), Feliciano-Seize filed a motion to dismiss Count 2 of the indictment. (Doc. 31).  Focusing on portions of

---

[1] The indictment complies with the Federal Rules of Criminal Procedure. See FED. R. CRIM. P. 7(c)(1) ("The indictment…must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."). Feliciano-Seize does not argue that the indictment lacks specificity.

the analysis in Range II, the defendant contends that Section 922(g)(1) is unconstitutional as applied to him.

Feliciano-Seize argues that the government "will not be able to cite any analytically relevant statute or case that prohibited a convict who concluded his felony sentence more than twenty years ago from possessing a handgun." (Doc. 32, Def. Br. in Supp. at 4).   The government responds by arguing that clear historical support for the defendant's continued disarmament exists based upon his prior criminal history. (Doc. 35, Gov. Br. in Opp. at 10-15).

Both parties invite the court to go outside the indictment to resolve the motion to dismiss.  In opposition to the motion, the government spends considerable time discussing the facts it intends to prove at trial, that is, details of the alleged offense conduct not included in the indictment. (See Doc. 35, Br. in Opp. at 2-3, 14; Doc. 38, Supp. Br. in Opp. at 3-4).  For his part, Feliciano-Seize also specifically requested an "evidentiary hearing to resolve any material factual disputes" raised by his motion. (Doc. 31 at 2).  All of this suggests that the parties are not quite sure how district courts will address as-applied challenges to Section 922(g)(1) in the criminal context in light of appellate decisions addressing the Second Amendment right in the civil context.

Following an initial round of briefing where both parties cited to facts existing outside the indictment, the court ordered the government to file the

3

records of Feliciano-Seize's convictions. (Doc. 37).  On March 28, 2025, the

government provided certified copies of the defendant's criminal records from the

Commonwealth of Massachusetts and the State of New York. (See Docs. 38-1 to

38-3).  Those records reflect that:

- On April 11, 1989, in the Commonwealth of Massachusetts, Hampden County Superior Court, Feliciano-Seize pled guilty to one count of armed robbery in violation of MASS. GEN. LAWS ch. 265 § 17. (Doc. 38-1).   The court sentenced Feliciano-Seize to ten (10) years of imprisonment.

- On June 7, 2001, in the State of New York, Queens Criminal Court, Feliciano-Seize pled guilty to one count of assault in the third degree in violation of N.Y. PENAL LAW § 120.00(1). (Doc. 38-2).  The court sentenced Feliciano-Seize to one (1) year of conditional discharge.

- On April 19, 2003, in the State of New York, Queens Criminal Court, Feliciano-Seize pled guilty to one count of criminal possession of a controlled substance in violation of N.Y. PENAL LAW § 220.03. (Doc. 38-3).   Feliciano-Seize was sentenced to ten (10) days of imprisonment.

The government attached Feliciano-Seize's records to a supplemental

brief in opposition. (Doc. 38).  Although permitted to file a supplemental brief in

support, the defendant responded by letter dated April 11, 2025, making his

motion ripe for disposition. (Doc. 39).

**Standard of Review**

In considering a motion to dismiss, the court must accept as true the factual

allegations set forth in the indictment. United States v. Besmajian, 910 F.2d

1153, 1154 (3d Cir. 1990).  But, in reviewing a motion to dismiss, that generally

means that the court cannot consider extraneous matters. See United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007); United States v. Huet, 665 F.3d 588, 601 (3d Cir. 2012), abrogated on other grounds by Rehaif v. United States, 588 U.S. 225, 227 (2019) (emphasizing that, in assessing a defendant's Second Amendment challenge on appeal, the Third Circuit was "limited to determining whether, based on the allegations in the Indictment—and only the allegations in the Indictment—[the defendant's] Second Amendment rights have been violated.").

On the other hand, certain facts are critical when considering an as-applied challenge to Section 922(g)(1) in the criminal context such as: 1) "the predicate offenses that made [the defendant] a felon[,]" and 2) "the circumstances of a criminal offense" whether charged or uncharged. United States v. Moore, 111 F.4th 266, 273 (3d Cir. 2024). Individuals completing their criminal sentence outside of prison do not have a Second Amendment right to possess a firearm. United States v. Quailes, 126 F.4th 215, 217 (3d Cir. 2025) (citing Moore, 111 F.4th at 273). So certain facts are essentially dispositive in an as-applied challenge to Section 922(g)(1), including circumstances where the government charges the defendant while they are completing a previous sentence on federal supervised release, see Moore at 273, or on state probation or parole, Quailes, 126 F.4th at 223.

5

From the records provided by the government, Feliciano-Seize completed his last criminal sentence more than twenty years ago.  He believes that fact is a difference-maker in this case.  Feliciano-Seize also challenges the government's reliance on its trial evidence and its reference to police records.  (Doc. 39).  Feliciano-Seize makes a valid argument.  The court will not accept the government's narrative of the reasons it charged the defendant because it had the opportunity to make those allegations in the indictment.  Likewise, the court will not consider any of the police records generated in the investigation of the defendant's present charges.

But, along those same lines, Feliciano-Seize's request for a hearing will be denied.  This is not a civil action initiated by Feliciano-Seize to enjoin the enforcement of Section 922(g)(1) against him. See e.g. Pitsilides v. Barr, 128 F.4th 203, 205 (3d Cir. 2025); Range II, 124 F.4th at 232.  The question of whether a hearing is appropriate under these circumstances has not been squarely answered with binding precedent. See United States v. Mollett, No. 3:21-CR-16-21, 2025 WL 564885, at *4, n. 2 (W.D. Pa. Feb. 20, 2025)(Horan, J.).  Moreover, recent decisions in the declaratory judgment context create questions when attempting to apply Second Amendment jurisprudence to cases where a criminal defendant has been charged with violating Section 922(g)(1). See Range II, 124 F.4th at 280 (Krause, J, concurring in the judgment).  In her

6

Range II concurrence, Judge Krause recognized that there are "intractable doctrinal and practical problems" with resolving an as-applied challenge to Section 922(g)(1) on a retroactive basis after a defendant has been charged with violating that statute, including an "intractable due process problem." See id. at 281–85; see also United States v. Johnson, No. 2:24-CR-127, 2025 WL 276752, at *3 (W.D. Pa. Jan. 23, 2025)(citations omitted)(observing "potential pitfalls" in applying different approaches to addressing the constitutionality of Section 922(g)(1) as developed in the other United States Circuit Courts of Appeals).

The court appreciates these issues. Pretrial motions are limited in the criminal context to requests "that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1), 12(b)(3). To resolve the fact issues related to the defendant's post-conviction conduct as advanced by the government, the court would either need to conduct a hearing delving into facts that must be resolved by a jury or defer ruling on the defendant's as-applied challenge to Section 922(g)(1) until after trial. See FED. R. CRIM. P. 12(d). The first choice might infringe on Feliciano-Seize's other constitutional rights; therefore, a pre-trial hearing is out of the question.

This case, however, does not require deferring a ruling on the motion. Faced with similar as-applied challenges to Section 922(g)(1), the court has accepted public records of a defendant's prior criminal convictions, but not

factual narratives offered by the government regarding those convictions or the government's recitations of the events leading to a defendant's arrest. See United States v. Birry, No. 3:23cr288, 2024 WL 3540989, at *2 (M.D. Pa. July 25, 2024); United States v. Adams, No. 3:23cr122, 2024 WL 54112, at *1–*2 (M.D. Pa. Jan. 4, 2024).  No reason exists to depart from those boundaries in this case.[2]  Feliciano-Seize's as-applied challenge to Section 922(g)(1) can be resolved by reference to his criminal convictions, the elements of those offenses, and the elements of the offenses charged in this case.

**Analysis**

As noted above, Count 2 of the indictment contends that Feliciano-Seize violated Section 922(g)(1), which provides:

> It shall be unlawful for any person -- . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

---

[2] The Sixth Circuit specifically endorses this approach. See United States v. Williams, 113 F.4th 637, 659 (6th Cir. 2024).  The Third Circuit has cited Williams favorably in several recent decisions.  See Pitsilides, 128 F.4th at 211; Quailes, 126 F.4th at 221, n. 6; Range II, 124 F.4th at 230.

Discussing the law as it has developed over the past year, the government asserts that Feliciano-Seize is dangerous and should not be able to possess a firearm. Feliciano-Seize argues that the government's argument lacks historical support. Before determining whether the government has met its burden in this case, it is helpful to review the Second Amendment cases binding on this court.

**1. Second Amendment Case Law**

This present dispute centers on a fundamental American right "necessary to our system of ordered liberty[,]" the right to keep and bear arms. McDonald v. Chicago, 561 U.S. 742, 778 (2010)(plurality opinion). The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND II.

"Derived from English practice and codified in the Second Amendment, the right secures for Americans a means of self-defense." United States v. Rahimi, 602 U.S. 680, 690 (2024)(citing New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U.S. 1, 17 (2022)). The Second Amendment right is not connected to "participation in a structured military organization[,]" or "limited to the carrying of arms in a militia." District of Columbia v. Heller, 554 U.S. 570, 584-85 (2008). Rather, the Second Amendment guarantees the individual right to possess and carry weapons in case of confrontation. Id. at 592. The Second Amendment

further guarantees the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 597 U.S. at 9 (citations omitted). Additionally, "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Id. at 10.

"Like most rights," however, "[t]he right secured by the Second Amendment is not unlimited." Heller, 554 U.S. at 626. "[T]he right was never thought to sweep indiscriminately." Rahimi, 602 U.S. at 691. Rather, restrictions on firearms rights predate the ratification of the Second Amendment. See id.

Recent Second Amendment jurisprudence has increased legal scrutiny of modern firearms regulations. Section 922(g)(1) is a straightforward "prohibition[ ] on the possession of firearms by felons." Range II, 124 F.4th at 229 (citing Heller, 554 U.S. at 626. "[S]ince 1961 'federal law has generally prohibited individuals convicted of crimes punishable by more than one year of imprisonment from possessing firearms.' " Id. (citation omitted). But Section 922(g)(1) itself is not sufficiently longstanding to demarcate the scope of the constitutional right. Id.

Feliciano-Seize is one of many criminal defendants who have raised as-applied challenges to Section 922(g)(1) in recent years. The standard for adjudicating Second Amendment challenges is as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the

10

> Nation's historical tradition of firearm regulation. Only then
> may a court conclude that the individual's conduct falls
> outside the Second Amendment's "unqualified command."

Bruen, 597 U.S. at 24.

The government "bears the burden 'to justify its regulation.' " Rahimi, 602 U.S. at 691.  Consequently, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.' " Rahimi, 602 U.S. at 692 (quoting Bruen, 597 U.S. at 29).

District courts are also directed to examine the historical tradition of firearm regulation to "help delineate the contours of the [Second Amendment] right." Id. at 691 (citing Bruen, 597 U.S. at 17).  When confronted with present-day firearm regulations, the "historical inquiry that courts must conduct will often involve reasoning by analogy…" Bruen, 597 U.S. at 28.  Although not "an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment,"  Supreme Court precedents "point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 29 (citations omitted).  "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are *central* considerations when engaging in an analogical inquiry." Id. (citations omitted, quotation marks

11

removed) (emphasis in original).   "In other words, a modern firearms regulation

passes constitutional muster only if it is 'consistent with the principles that

underpin our regulatory tradition.' " <u>Moore</u>, 111 F.4th at 269 (quoting <u>Rahimi</u>, 602

U.S. at 692); <u>see also</u> <u>Bruen</u>, 597 U.S. at 26–31.

"[A]nalogical reasoning under the Second Amendment[,]" however, "is

neither a regulatory straightjacket nor a regulatory blank check." <u>Bruen</u>, 597 U.S.

at 30.  Such reasoning only requires "that the government identify a well-

established and representative historical *analogue*, not a historical *twin*." <u>Id.</u>

(emphasis in original).  Furthermore, "even if a modern-day regulation is not a

dead ringer for historical precursors, it still may be analogous enough to pass

constitutional muster." <u>Id.</u>  In <u>Rahimi</u>, the Supreme Court noted that "some courts

have misunderstood [this] methodology," and its precedents "were not meant to

suggest a law trapped in amber." 602 U.S. at 691.

## 2. Whether Section 922(g)(1) is Unconstitutional As Applied to Feliciano-Seize

Turning to Feliciano-Seize's arguments, the defendant lodges an as-

applied challenge to Section 922(g)(1).  An as-applied challenge requires courts

"to ask whether a statute's 'application to a particular person under particular

circumstances deprived that person of a constitutional right." <u>Moore</u>, 111 F.4th at

272–73 (quoting <u>United States v. Mitchell</u>, 652 F.3d 387, 405 (3d Cir. 2011)

(cleaned up)).  Under the <u>Bruen</u> framework, the first step considers whether the

text of the Second Amendment applies to a person and his proposed conduct. See 597 U.S. at 31-32. Here, the government concedes that Feliciano-Seize is "one of the 'people' whom the Second Amendment presumptively protects." (Doc. 35 at 10 (citing Moore, 111 F.4th at 269)). Additionally, Section 922(g)(1) regulates and "punishes 'quintessential Second Amendment conduct' – possession of a firearm." Quailes, 126 F.4th at 220–21 (quoting Moore, 111 F.4th at 268). The United States Constitution thus presumptively protects Feliciano-Seize's conduct.

Under Bruen's second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. The court must determine whether Section 922(g)(1) "is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.' " Rahimi, 602 U.S. at 681 (quoting Bruen, 597 U.S. at 24).

Per the government: "At a minimum, the historical record establishes that Congress may disarm those felons whose underlying conduct demonstrates that they are dangerous to themselves or others." (Doc. 35 at 10-11 (citations omitted)). The court agrees. Rahimi, after all, "did bless disarming (at least temporarily) physically dangerous people." Range II, 124 F. 4th at 230.

13

In Rahimi, the Supreme Court reviewed the history of American gun regulations and found support in the nation's tradition of surety and going armed laws to hold that another firearm restriction, 18 U.S.C. § 922(g)(8), passed constitutional muster. Id. at 693–98. Although Section 922(g)(8) is a modern regulation preventing an individual from possessing a firearm while subject to a domestic violence restraining order, Rahimi made clear that the historical analogue required by Bruen need not be an "historical twin" or a "dead ringer." Id. at 692.

Following the United States Supreme Court's decision in Rahimi and the Third Circuit's decision in Range II, some guideposts now exist in the Section 922(g)(1) as-applied analysis: "disarmament is justified as long as a felon continues to present a special danger of misusing firearms," that is, "when he would likely pose a physical danger to others if armed." Pitsilides, 128 F.4th at 210 (quoting Rahimi, 602 U.S. at 698; Range II, 124 F. 4th at 232)(cleaned up)). Consequently, "[a]s an original matter, the Second Amendment's touchstone is dangerousness[.]" Id. (quoting Folajtar v. Att'y Gen., 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting)). Based on how the law has developed in the Third Circuit following Rahimi, the government has met its burden in proving that Section 922(g)(1) has traditional historical analogues to the extent that it disarms

dangerous people.[3]  The government has also met its burden by showing that Section 922(g)(1)'s application to Feliciano-Seize is consistent with the nation's historical tradition of firearm regulation.

According to the government, the defendant's criminal history, "is indicative of activities that could lead to violent confrontation." (Doc. 35 at 13 (citation omitted)).  The government argues that Feliciano-Seize's conviction and the later offenses "confirm[] that [d]efendant cannot be trusted to possess or use firearms in a way that would not threaten the orderly function of society." (Id.)  These arguments are compelling considering Feliciano-Seize's predicate offense of armed robbery and his subsequent conviction for assault.

On April 11, 1989, Feliciano-Seize pled guilty to one count of armed robbery in violation of MASS. GEN. LAWS ch. 265 § 17. (Doc. 38-1).  Criminal records reflect that a state court judge in Springfield, Massachusetts sentenced Feliciano-Seize to a term of ten (10) years of incarceration at the Massachusetts Correctional Institution at Concord. (Id.)

In relevant part, the Massachusetts armed robbery statute provides:

> Whoever, being armed with a dangerous weapon, assaults
> another and robs, steals or takes from his person money
> or other property which shall be the subject of larceny shall

---

[3] Courts "may rely on historical principles derived in past cases…and the historical analogues underlying those principles." Quailes, 126 F.4th at 221–22, n. 6.

> be punished by imprisonment in the state prison for life or
> for any term of years....

MASS. GEN. LAWS ch. 265 § 17.

Armed robbery "is but an aggravated form of common law robbery made

punishable" by the statute. Commonwealth v. Nickologines, 76 N.E.2d 649, 651

(Mass. 1948). Robbery was one of the nine traditional felonies at common law

and often punishable by death and forfeiture from twelfth-century England to the

Founding Era. See Folajtar, 980 F.3d at 904-05 & n. 9; see also Range II, 124

F.4th at 227 (citing 4 William Blackstone, Commentaries on the Laws of England

54 (1769)) ("At English common law, felonies were so serious they were

punishable by estate forfeiture and even death."); Quailes, 126 F.4th at 221 n. 7

(discussing historical sources indicating that states like New York and

Pennsylvania imposed the death penalty and estate forfeiture for persons

convicted of robbery).

"The death penalty was ubiquitous in the Founding Era[.]" Folajtar, 980

F.3d at 904–05 (citations omitted). Specific to Feliciano-Seize's prior conviction,

a person found guilty of violating the state's armed robbery statute could have

been executed by the Commonwealth of Massachusetts until 1839.

Commonwealth v. Tarrant, 326 N.E.2d 710, 713 (Mass. 1975) (citing St. 1819,

ch. 124, s 1; St. 1839, ch. 127); see also Commonwealth v. Cody, 42 N.E. 575,

576 (1896)(citing Commonwealth v. Martin, 17 Mass. 359 (1821)). Our nation

has an historical tradition of severely and permanently punishing convicted armed robbers like Feliciano-Seize.

The court notes that it cannot "defer blindly to § 922(g)(1) in its present form." Range II, 124 F.4th at 230 (citing Williams, 113 F.4th at 658–61). But it is common sense "that certain categories of offenses—like historical crimes against the person—will more strongly suggest that an individual is dangerous." Williams, 113 F.4th at 660. "And in many instances...the dangerousness will be self-evident." Id.

The purpose of the Massachusetts armed robbery statute "is to make robbery while possessed of a dangerous weapon a more serious offense because such robbery 'would naturally lead to resistance and conflict' in which use of the dangerous weapon may be expected to follow." Tarrant, 326 N.E.2d at 713 (quoting Commonwealth v. Mowry, 11 Allen 20, 22 (1865)). Put another way, armed robbery is a "plainly dangerous" felony. United States v. West, 703 F. Supp. 3d 552, 558 (E.D. Pa. 2023); see also United States v. Dockery, No. CR 23-068-KSM, 2023 WL 8553444, at *5 (E.D. Pa. Dec. 11, 2023)(Marston, J.)(describing robbery is a "quintessentially violent and dangerous crime[.]"); United States v. Ames, No. CR 23-178, 2023 WL 5538073, at *3 (E.D. Pa. Aug. 28, 2023)(Kenney, J.)(describing robbery as a "paradigmatic" violent crime). Those convicted of armed robbery present "a clear example of this persons who

17

are both not to be trusted by society and are considered dangerous." United States v. Hendricks, No. 3:22-CR-397, 2023 WL 6276681, at *11 (M.D. Pa. Sept. 26, 2023)(Mariani, J.)(citation omitted).  Offenses like armed robbery provide conclusive evidence that someone poses a special danger of misusing firearms. See Pitsilides, 128 F.4th at 211 (citing United States v. Bullock, 123 F.4th 183, 185 (5th Cir. 2024); Williams, 113 F.4th at 657).

Feliciano-Seize emphasizes that his armed robbery guilty plea occurred in 1989, making it a thirty-six (36) year old conviction. (Doc. 39).  This passage of time is insufficient under the circumstances. See Dockery, 2023 WL 8553444, at *6.  Contrast Feliciano-Seize with civil plaintiffs like Bryan Range.  Range pled guilty to making a false statement to obtain food stamps in 1995. Range II, 124 F.4th 222–23.  He accepted full responsibility, served three years of probation, and paid restitution, fines, and costs. Id.  Other than that conviction, Range had his share of minor traffic and parking infractions and a summary offense for fishing without a license. Id.  Range, however, kept getting rejected by Pennsylvania's instant background check system. Id.  After learning he was barred from buying a firearm because he lied on a food stamp application, Range sold his deer-hunting rifle that his wife gifted him to a federally licensed dealer. Id.  Range also proactively sued the government for a declaration that Section 922(g)(1) violated his Second Amendment rights as applied to him. Id.

18

Also contrast Feliciano-Seize with civil plaintiffs like Daniel Binderup and Julio Suarez. See Binderup v. Att'y Gen. United States of Am., 836 F.3d 336, 340 (3d Cir. 2016). Faced with state and federal impediments to gun ownership by their decades-old convictions, Binderup and Suarez successfully petitioned Pennsylvania courts to remove any state prohibition on possessing firearms. Id. They then both brought civil actions for declaratory judgment in federal court. Ultimately, their circumstances persuaded two different district court judges to declare that Section 922(g)(1) was unconstitutional as applied to them and those decisions were affirmed by the Third Circuit. Id. at 356–57. As a result, Binderup and Suarez successfully reclaimed their Second Amendment right to possess a firearm in their homes. Id.

Feliciano-Seize, on the other hand, left a Massachusetts prison in 1999 after spending a decade behind bars. He moved to the Borough of Queens. On April 16, 2001, the NYPD arrested the defendant. (Doc. 38-2). Feliciano-Seize pled guilty two months later to one count of assault in the third degree in violation of N.Y. PENAL LAW § 120.00(1) and received a one-year sentence of conditional discharge. (Id.) The Queens Criminal Court certified in June 2024 that a balance remains due on his fines, fees, and surcharges from that offense. (Id.) As to that assault conviction,

> Section 120.00(1) criminalizes actions that: "[w]ith intent to
> cause physical injury to another person ... cause[ ] such

injury." N.Y. PENAL LAW § 120.00(1). Thus, the elements of the offense consist of: (1) specific intent to cause, (2) physical injury, and (3) that the intended physical injury actually occurs. See People v. Juarez, 13 Misc.3d 1131, 827 N.Y.S.2d 564, 567 (N.Y. Cty. Ct. 2006) ("In order to convict a defendant of the misdemeanor of Assault in the Third Degree, the People must prove beyond a reasonable doubt the specific intent of the defendant to cause physical injury, and the causing ... of such injury."). Further, New York law makes clear that the "physical injury" element requires substantial harm. See [N.Y. PENAL LAW] § 10.00 (defining physical injury as "impairment of physical condition or substantial pain").

Maradiaga v. Att'y Gen. of the United States of Am., 677 F. App'x 69, 73 (3d Cir. 2017).

Feliciano-Seize's assault conviction involved physical violence and physical injury to another person. By pleading guilty to the charge, Feliciano-Seize admitted that he intended to hurt someone. This reflects ongoing dangerousness. "[E]ven a conviction for simple assault...demonstrates a defendant's dangerousness." United States v. Roach, No. 2:24-CR-00077-JDW, 2025 WL 871618, at *3 (E.D. Pa. Mar. 20, 2025)(Wolson, J.).

In 2003, the NYPD arrested Feliciano-Seize again. (Doc. 38-2). He pled guilty to criminal possession of a controlled substance in violation of N.Y. PENAL LAW § 220.03. The Queens Criminal Court also certified that a balance remains due on his fines, fees, and surcharges from that offense. (Doc. 38-2). The court sees a stark contrast between the criminal history of Feliciano-Seize and the civil plaintiffs in Range II and Binderup.

20

Feliciano-Seize also stands accused of lying when trying to buy a gun and trying to deceive that dealer as to the lawfulness of the sale. See 18 U.S.C. § 922(g)(6). As alleged, in 2021, Feliciano-Seize tried to obtain a Smith & Wesson Sport 1 5.56 mm rifle from a federally licensed firearms dealer. (Doc. 1). These facts also make Feliciano-Seize different than the above-mentioned civil plaintiffs. They proactively sought declarations that Section 922(g)(1) was unconstitutional as applied to them. If proven, Feliciano-Seize tried to obtain a firearm and ultimately did possess a firearm knowing of his armed robbery conviction, but never tried to obtain a declaratory judgment regarding his Second Amendment rights. That pathway predated the criminal conduct alleged in this case. See e.g. Binderup, 836 F.3d at 340.

Consequently, the court need not further probe Feliciano-Seize's post-conviction conduct or try to fill in any gaps in his life story. Feliciano-Seize's predicate offense of armed robbery is a violent, dangerous crime. Further, his subsequent conduct, which he admitted to, involves intentionally causing physical injury and substantial harm to another human being. Those two convictions definitively establish that the defendant poses a special danger of misusing firearms in a way that would endanger others. Pitsilides, 128 F.4th at 213. Accepting the facts of the indictment as true, Feliciano-Seize's post-conviction conduct also includes lying in an attempt to obtain a Smith & Wesson

Sport 1 5.56 mm rifle and knowingly possessing a Taurus .38 caliber revolver despite also knowing of his disqualification.   The government has thus demonstrated that Feliciano-Seize was and is too dangerous to keep and bear arms.  Section 922(g)(1) is constitutional as applied to the defendant.

## Conclusion

For the reasons set forth above, Feliciano-Seize's motion to dismiss Count 2 of the indictment will be denied and this matter will be scheduled for trial.  An appropriate order follows.

Date: ___4/23/25___

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court